PURNELL, Odessa, As the Administratrix of the Estate of Wise, Larry McKinley, Deceased

v.

NORNED SHIPPING B.V. and Chesapeake Trading Corporation

v.

WILMINGTON STEVEDORES and City of Wilmington, (Third Party Defendants).

Appeal of WILMINGTON STEVEDORES, INC.

PURNELL, Odessa, As the Administratrix of the Estate of Wise, Larry McKinley, Deceased

v.

WILMINGTON STEVEDORES, INC. Chesapeake Trading Corporation

v.

CITY OF WILMINGTON and Norned Shipping B.V., (Third-Party Defendants).

Appeal of WILMINGTON STEVEDORES, INC.

GIST, Brenda, As the Administratrix of the Estate of William Martin Gist, Deceased

v.

NORNED SHIPPING B.V.

v.

WILMINGTON STEVEDORES and City of Wilmington.

Appeal of WILMINGTON STEVEDORES, INC.

GIST, Brenda, As the Administratrix of the Estate of Gist, William Martin, Deceased

v.

WILMINGTON STEVEDORES, INC.

v.

CITY OF WILMINGTON and Norned Shipping B.V. and Chesapeake Trading Corporation.

Appeal of WILMINGTON STEVEDORES, INC.

Nos. 85–1507 to 85–1510.

United States Court of Appeals, Third Circuit.

Argued May 1, 1986.

Decided Sept. 17, 1986.

Rehearing Denied Oct. 31, 1986.

James W. Johnson (argued), White & Williams, Philadelphia, Pa., for appellant.

Jeffrey S. Goddess (argued), Saul, Ewing, Remick & Saul, Wilmington, Del., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges and MENCER, District Judge.*

* Honorable Glenn E. Mencer, United States District Judge for the Western District of Pennsyl-

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

### I.

On September 27, 1982, two crane operators employed by appellee, the City of Wilmington (the City), died in an accident at the Port of Wilmington. The crane was in the process of discharging a load of steel coils from the foreign vessel M/V NORNED THOR when the crane toppled into the ship's cargo hold, killing the operators and causing substantial damage to both the ship's cargo and the crane. At the time of the accident, the crane was owned by the City, operated by City employees, and leased by the City to appellant, Wilmington Stevedores, Inc. (the Stevedore), a company in the business of providing stevedoring services at the Port of Wilmington.

Representatives of the deceased crane operators brought wrongful death actions against the vessel's owner Norned Shipping, B.V., and the Stevedore. Cross-claims were filed between the defendants and third-party claims were filed by defendants against the City and the charterer of the NORNED THOR, the Chesapeake Trading Corporation.

The district court bifurcated the liability and damage issues. In its April 25, 1985 Memorandum Opinion on liability, the district court concluded that the NORNED THOR's unseaworthiness was "a substantial factor" in causing the accident and that the unseaworthiness was not caused by Norned Shipping, B.V. or Chesapeake Trading Corporation. Memorandum Opinion at 13. Rather, the district court found that the unseaworthiness of the NORNED THOR was caused by the negligence of the Stevedore:

(a) in failing to properly supervise its longshoremen working aboard the vessel to assure that they properly monitored the discharge operation; (b) in exceeding the weight capacity of the crane as set by

vania, sitting by designation.

OSHA Regulations; (c) in increasing the weight of the lift beyond the limit imposed by the City of Wilmington; and (d) in failing to warn the operators of the crane that the load had been increased. Memorandum Opinion at 7.

Accordingly, the district court held that the plaintiffs were entitled to recover against Norned Shipping, B.V. and the Stevedore and that Norned Shipping, B.V. was entitled to be indemnified by the Stevedore. In addition, the district court held that the Stevedore was "not entitled to indemnity from the City of Wilmington ... because there was no express or implied warranty by the City that the crane was fit for the purpose of lifting a draft in excess of 12 coils." Memorandum Opinion at 14. Finally, the district court held that the Stevedore was not entitled to contribution from the City because Delaware's Workmen's Compensation Act foreclosed the imposition on the City of liability for the deaths of plaintiffs' decedents.

In its June 19, 1985 Memorandum Opinion denying the Stevedore's request for reconsideration, the district court assigned 99 percent of the fault for the accident to the Stevedore and one percent to the City for "failing to protect plaintiffs from negligence of the Stevedore in violating the express restrictions on the ... crane." Memorandum Opinion at 4 n. 2.

In its appeal from the final judgment entered on these rulings, the Stevedore asserts that the district court erred in denying it indemnity and contribution from the City as well as in apportioning fault. We will affirm on the indemnity and apportionment of fault issues and reverse on the contribution issue.

## II.

■ The district court found that federal maritime law recognizes indemnity based upon an implied warranty of workmanlike service. *Ryan Stevedoring Co. v. Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).[1] The district court concluded, however, that the City was not liable to the Stevedore for indemnity on the basis of an implied warranty because the City had expressly limited any load capacity warranties. In particular, the district court found as a matter of fact that the City had authorized the Stevedore to use the crane to lift a maximum of twelve steel coils and that the accident had been caused by loading 15½ coils. These findings of fact are not clearly erroneous. *See Humble Oil v. Philadelphia Ship*, 444 F.2d 727, 731–32 (3d Cir.1971). We, therefore, affirm the district court's indemnity holding.

## III.

■ The parties agree that the federal maritime law provides for contribution among joint tortfeasors. *See e.g., Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc., et al.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). The City correctly points out, however, that there is an exception to this rule where one tortfeasor is immune from liability to the injured party. In such a situation, the immune tortfeasor cannot be made to pay for the plaintiffs' injuries indirectly through contribution. Thus, where one tortfeasor is the employer of the injured party and the injured party receives benefits under the Longshoremen's And Harbor Workers' Compensation Act ("LHWCA"), no contribution can be awarded against the employer because the LHWCA makes its statutory remedy exclusive as between the employee and his employer. *Id.* at 111–13, 94 S.Ct. at 2177–78.[2] On the other hand, when the in-

---

1. The 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act overruled *Ryan* as it applies to covered employees. *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 40 (3d Cir.1975). But the 1972 amendments do not limit *Ryan's* applicability to employees, like plaintiffs' decedents, who are not covered by that Act.

2. The LHWCA, 33 U.S.C. §§ 901–933 does not bar contribution in this case because the LHWCA expressly exempts from its coverage employees of political subdivisions of states, such as municipalities. 33 U.S.C. § 903. Therefore, exclusive remedy provisions of the LHWCA, 33 U.S.C. § 905, do not apply here.

jured party is entitled to sue both tort-feasors for his injuries, there is no reason to deny contribution between the joint tort-feasors. As the Supreme Court explained in the *Cooper Stevedoring* case in the context of a contribution claim by the owner of a vessel against a negligent stevedore who did not employ the injured longshoreman:

> Sessions [who was injured while unloading the vessel] was not an employee of Cooper [the stevedore which had loaded it in another port] and could have proceeded against either the Vessel or Cooper or both of them to recover full damages for his injury. Had Sessions done so, either or both of the defendants could have been held responsible for all or part of the damages. Since Sessions could have elected to make Cooper bear its share of the damages caused by its negligence, we see no reason why the Vessel should not be accorded the same right. On the facts of this case, then, no countervailing considerations detract from the well-established maritime rule allowing contribution between joint tort-feasors.

*Cooper,* 417 U.S. at 113, 94 S.Ct. at 2178.

The City asserts that this case falls within the exception to the general rule of contribution because it made payments to the plaintiffs under Delaware's Workmen's Compensation Act. 19 Del.C. § 2301 et seq. Accordingly, the City argues that the plaintiffs were barred from bringing suit against the City under Section 2304 of that Act which makes the workmen's compensation remedy exclusive as between the injured employee and his employer. 19 Del.C. § 2304.[3] The district court denied contribution on this theory. We conclude that it erred in doing so.

In *Moragne v. States Marines Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the estate of a longshoreman killed while working aboard a vessel in navigable waters within the State of Florida brought a wrongful death action against the owner of the vessel. The Supreme Court held that federal maritime law affords a federal remedy for wrongful deaths occasioned in state territorial waters.

The City argues that *Moragne* is inapposite here because the defendant in that case was the vessel owner and not the former employer of the plaintiff's decedent. We find nothing in *Moragne* that would make this distinction material, however. *Moragne* overruled *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), which had imported into American admiralty law the old English common law rule that no civil action will lie for an injury which results in death. In overturning this outmoded view, the *Moragne* Court characterized its action as "merely remov[ing] a bar to access to the existing general maritime law." 398 U.S. at 405–06, 90 S.Ct. at 1790. The City has identified nothing in the general maritime law that would limit wrongful death claims to shipowners. The inquiry in such cases is the "violation of maritime duties," 398 U.S. at 409, 90 S.Ct. at 1792, not the defendant's relationship to the vessel.

This view is supported by the Fifth Circuit's decision in *Thibodaux v. Atlantic Richfield Co.,* 580 F.2d 841 (5th Cir.1978). The plaintiffs' decedent in *Thibodaux* was an oil field construction worker who drowned in a canal while being transported to work at ARCO's oil field in a vessel owned by a third party. The plaintiffs filed suit against ARCO under the general maritime law and the LHWCA, alleging that ARCO negligently caused the death of the deceased. ARCO, who had contracted out oil field construction and maintenance work to the decedent's direct employer, was deemed his "statutory employer" under Louisiana law. The Court held that, while the decedent was not covered by the LHWCA because his work was performed

---

**3.** Section 2304 provides:

Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

solely on land, he had a wrongful death claim against ARCO based upon the general maritime law as interpreted in *Moragne.* The *Thibodaux* Court concluded:

> The plaintiffs are permitted to go forward with their lawsuit not merely because the deceased was killed upon navigable waters, but because the facts surrounding the occurrence display a sufficient relationship to traditional maritime activity, and because the Supreme Court in Moragne saw fit to provide a federal maritime remedy for wrongful death occurring upon state territorial waters regardless of the rights which might be afforded to the plaintiff under state law.

580 F.2d at 847.

The *Thibodaux* Court thus applied *Moragne* in the context of a case in which the plaintiffs' decedent had a less direct link to maritime activity than did plaintiffs' decedents here and in which the defendant was the decedent's employer and not the owner of the vessel. Similarly applying *Moragne,* we hold that the plaintiffs in this case had a federal maritime claim for wrongful death against the City.

■ Having recognized the existence of such a federal claim, we are constrained to hold that, under the supremacy clause, that claim cannot be preempted or impaired by state law. The *Thibodaux* Court reached the same conclusion in the course of rejecting ARCO's affirmative defense based on the exclusivity provisions of Louisiana's Workmen's Compensation Act. The Court there concluded that the "exclusive remedy provision in a state Workmen's Compensation Law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law." *Thibodaux,* 580 F.2d at 847. This conclusion was based in part on *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 409, 74 S.Ct. 202, 204-05, 98 L.Ed. 143 (1953). The Supreme Court there noted that while "states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantive admiralty rights as defined in controlling

acts of Congress or by interpretive decision of this Court."

Moreover, we believe that Delaware, in its workmen's compensation statute, has recognized the preemption principles articulated in *Thibodaux.* Delaware's Act expressly stipulates that its provisions do not apply to workers "injured or killed while engaged in interstate or foreign commerce, or to their employers, whenever the laws of the United States provide for compensation or for liability for such injury or death." 19 Del.C. § 2310. While the LHWCA does not provide for such "compensation," the federal maritime common law, under *Moragne,* does impose "liability for such injury or death." Accordingly, Delaware's statute, by its own terms, is not applicable in the circumstances currently before this court.

Finally, the City argues that because the plaintiffs elected to accept the payments which the City tendered under Delaware's Workmen's Compensation Act, they cannot now sue the City, and that the City, accordingly, should not be exposed to liability for contribution. The record does not disclose anything concerning the City's reasons for tendering those payments or the plaintiffs' reason for accepting them and we decline to express an opinion on whether the plaintiffs could now bring a wrongful death action against the City. However, if the plaintiffs had a wrongful death claim against the City immediately following the decedents' deaths, as we hold they did, the Stevedore, at that point, had an *inchoate* claim for contribution against the City under the federal maritime law which would mature when it paid more than its share of the joint liability. The City has suggested no legal theory which would support the conclusion that the voluntary actions of the City and the plaintiff somehow operated to eliminate the Stevedore's contribution claim without its consent. We know of no such theory and decline to accept the City's argument.

On remand, the district court will enter judgment in the Stevedore's favor on its contribution claim against the City.

### IV.

The district court anticipated the possibility of a reversal of its ruling on contribution when it apportioned fault between the Stevedore and the City 99 percent to one percent. We commend the district court for this approach since it permitted us to review both issues in this one appeal.

The district court concluded that the City's crane "was not inherently defective but was rendered defective by the Stevedore in loading it beyond the capacity set by the City." In the district judge's view, this tragic accident was caused by the deliberate and knowing actions of the Stevedore in loading the crane beyond the level it had been told was the limit for safe operations. The only negligence found on the part of the City was its failure to anticipate such extreme conduct by providing an overload device which would have advised decedents of the Stevedore's overloading. Under these circumstances, we cannot say that the district court's apportionment of fault was clearly erroneous. Accordingly, we must uphold that apportionment. *Canal Barge Co., Inc. v. China Ocean Shipping Co.,* 770 F.2d 1357, 1362 (5th Cir.1985); *Harbor Tug & Barge, Inc. v. Belcher Towing Co.,* 733 F.2d 823, 825 (11th Cir.1984); *Getty Oil Co. (Eastern Operations), Inc. v. SS Ponce De Leon,* 555 F.2d 328, 334 n. 6 (2d Cir.1977).

### V.

For the foregoing reasons, we will reverse and remand to the district court for further proceedings consistent with the opinion.