**ORGULF TRANSPORT CO., Plaintiff,**

v.

**HILL'S MARINE ENTERPRISES, INC., Defendant, Third–Party Plaintiff,**

v.

**Consolidated Grain and Barge Company and Ohio Power Company, Third–Party Defendants.**

No. 01–CV–4159–JPG.

United States District Court, S.D. Illinois.

Jan. 8, 2002.

---

Carl J. Marshall, Gault, Marshall et al., Paducah, KY, for Orgulf Transport Co.

Frank J. Dantone, Edward D. Lamar, Joel J. Henderson, Henderson, Dantone et al., Greenville, MS, for Hills' Marine Enterprises, Inc., Hill's Marine Enterprises Inc.

Ronald E. Fox, Fox, Galvin, LLC, St. Louis, MO, for Consolidated Grain and Barge Co.

John C. Ryan, Feirich, Mager et al., Carbondale, IL, for Ohio Power Co.

### ORDER

GILBERT, District Judge.

Before the Court is a motion to dismiss (Doc. No. 16) made pursuant to Federal Rule of Civil Procedure 12(b)(6) by third-party defendant Ohio Power Company.

### STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff. *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir.), *cert. denied*, 531 U.S. 880, 121 S.Ct. 191, 148 L.Ed.2d 132 (2000). The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint. *Id.* at 405. "The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its factual sufficiency will be tested later—by a motion for summary judgment under

Rule 56, and if necessary by trial." *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir.2001).

When evidence outside the pleadings is attached to a motion labeled as a motion to dismiss, a court may construe the motion as a motion for summary judgment. *See Wilkow v. Forbes, Inc.,* 241 F.3d 552, 555 (7th Cir.2001); *Berthold Types Ltd. v. Adobe Systems Inc.,* 242 F.3d 772, 775 (7th Cir.2001). However, a motion styled as one to dismiss is not automatically rendered a motion for summary judgment at the instant of its filing just because the movant attaches extra documents. *See Berthold,* 242 F.3d at 775. "It is, rather, that once the district court actually considers additional documents, the motion must be treated as one for summary judgment." *Id.*

In this case, an affidavit is attached to Ohio Power's motion to dismiss. The Court will not, however, construe the motion as a motion for summary judgment. Rather, the Court will simply disregard the attached affidavit.

### FACTUAL ALLEGATIONS

On June 13, 2001, Orgulf Transport Co. ("Orgulf") filed the underlying complaint invoking the admiralty or, alternatively, the diversity jurisdiction of Court. Orgulf's Complaint ¶¶ 1–3 (Doc. No. 1). The complaint contains two counts against Hill's Marine Enterprises, Inc. (Hill's), one for negligence (*Id.* at ¶¶ 18–20) and one for breach of contract (*Id.* at ¶¶ 21–24).

The complaint alleges that Orgulf was the owner of three barges—barge numbers T13645B, SCF9102 and OR–7028 ("the barges"). *Id.* at ¶ 6. In March and April 2000, Orgulf delivered the barges to Trico Steel Company, LLC ("Trico") at its facility in Alabama. *Id.* at ¶ 7; Hill's Answer ¶ 7. The barges were allegedly loaded with HBI briquettes and pig iron. *Id.* Orgulf alleges that pursuant to a contract with Orgulf, Trico was responsible for unloading and cleaning the barges. *Id.* at ¶ 8. Orgulf alleges that Trico contracted with Hill's to unload and clean the barges. *Id.* at ¶¶ 9–10.

Orgulf alleges that Hill's unloaded the cargo from the barges but improperly and negligently cleaned the barges, leaving pig iron and HBI briquette debris on the barges. *Id.* at ¶¶ 11–16. Orgulf further alleges that the barges were loaded with coal and transported by Orgulf to a Gulf Power Company Power Plant in Pensacola, Florida. *Id.* at ¶ 15. Orgulf alleges that Gulf Power refused the shipment because the coal had been contaminated by the HBI briquette and pig iron debris. *Id.* at ¶ 16. Orgulf claims that it sustained more than $75,000 in damages as a result of Hill's allegedly negligent conduct.

On July 25, 2001, Hill's filed a third-party complaint against Ohio Power Company ("Ohio Power"). Hill's Third–Party Complaint (Doc. No. 4). Hill's claims that it properly swept and cleaned the barges. *Id.* at ¶ 6. Hill's further alleges that after it cleaned the barges, the barges were taken to a loading facility in Illinois and loaded with coal. *Id.* at ¶ 7. Hill's further alleges that Ohio Power Company was responsible for loading one or more of the barges. Finally Hill's alleges as follows:

Assuming that the barges were not cleaned properly by Hill's, which Hill's stringently denies, then Third Party Defendants negligently inspected said barges and should have rejected said barges for loading until the barges could be properly cleaned.... The negligence of the Third Party Defendants was the sole proximate or contributing legal cause of any damages sustained by the Plaintiff.

*Id.* at ¶ 11. On September 24, 2001, Ohio Power filed a motion to dismiss the third-party complaint. (Doc. No. 16). Both

Hill's and Orgulf have responded to the motion. (Doc. Nos. 21 and 22). Ohio Power has replied to those responses. (Doc. No. 23).

For the reasons discussed below, the Court will deny the motion to dismiss.

## *JURISDICTION*

The claims in this case fall within the admiralty jurisdiction of this Court. The Constitution extends to Article III courts the power to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. That power was codified at 28 U.S.C. § 1333(1), which provides for "original jurisdiction exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction...." 28 U.S.C. § 1333; *see also Weaver v. Hollywood Casino–Aurora, Inc.*, 255 F.3d 379, 382 (7th Cir.2001).

If the plaintiff properly invokes admiralty jurisdiction "neither complete diversity of citizenship nor a minimum jurisdictional amount in controversy is required, and the fact that diversity jurisdiction also can be alleged by the plaintiff as a basis of subject matter jurisdiction is of no moment." Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 14A Fed. Prac. & Proc. Juris.3d § 3676 (2001). Federal Rule of Civil Procedure 9(h) sets forth the procedure for invoking a federal court's admiralty jurisdiction. It provides as follows:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes

> whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. A case that includes an admiralty or maritime claim within this subdivision is an admiralty case within 28 U.S.C. § 1292(a)(3).

Fed.R.Civ.P. 9(h). Both the plaintiff and the defendant / third-party plaintiff have invoked admiralty jurisdiction, expressly citing Rule 9(h). The plaintiff has invoked this Court's diversity jurisdiction only as an alternative source of jurisdiction.

The mere invocation of the Court's admiralty jurisdiction and reference to Rule 9(h) does not necessarily make this an admiralty case. There must be a proper basis for this Court to assert admiralty jurisdiction over the claims presented.

In this case, in the underlying complaint, Orgulf has made tort and contract claims against Hill's. Hill's has made a negligence claim against Ohio Power, seeking "contribution and/or indemnity."

### 1. *Admiralty Tort Jurisdiction*

"A party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The Seventh Circuit has recently discussed the two-prong test for admiralty tort jurisdiction and stated as follows:

> The locality test reflects the traditional requirement that a tort occur on navigable waters. The requirement of a connection with maritime activity, also known as the nexus test, raises two issues. The court must first determine whether the incident involved has a potentially disruptive effect on maritime

commerce, and second, whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Weaver*, 255 F.3d at 382 (internal citations and quotations omitted).

In this case, Orgulf alleges that Hill's negligently unloaded cargo from three barges causing damages to Orgulf. Hill's alleges that Ohio Power negligently loaded the same barges, thereby contributing to Orgulf's damages. These claims meet both the "locality" and the "nexus" tests.

As for the locality prong, no party disputes that the ships were moored on navigable waterways. Claims involving the loading and unloading of ships moored on navigable waterways fall within admiralty tort jurisdiction. *See* Thomas J. Schoenbaum, Admiralty and Maritime Law § 3–4, at 73 (1987); *see also Ashland Oil, Inc. v. Third National Bank of Ashland*, 557 F.Supp. 862 (E.D.Ky.862) (asserting admiralty jurisdiction in case involving personal injuries and property damage caused by explosion during the unloading of gasoline from a river barge). Assertion of jurisdiction in this case is also consistent with the scope of admiralty jurisdiction as defined by the Extension of Admiralty Jurisdiction Act ("the Act"), which provides as follows:

> The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

46 U.S.C. § 740. It is not clear that the Act applies to this case because this case does not involve damages "caused by a vessel." The Act, however, is an indication of Congress' intent that cases arising out of the loading and unloading of ships be included within the Federal Courts' admiralty jurisdiction. Regardless of whether the Act applies to the situation presented by this case, this case falls within the traditional scope of admiralty tort jurisdiction because the allegedly negligent acts or omissions occurred on navigable water. The Act expanded the scope of the admiralty jurisdiction; it did not reduce its traditional scope.

This case also passes the so-called "nexus test." First, the loading and unloading of commercial barges with cargo is directly related to maritime commerce. Second, the loading and unloading of commercial barges with cargo is substantially related to traditional maritime activity. Therefore, in this case, the negligence claims fall within the admiralty tort jurisdiction of this court.

### 2. *Admiralty Contract Jurisdiction*

 Admiralty contract jurisdiction "extends to all contracts that 'have reference to maritime service or maritime transactions.'" *Continental Casualty Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 517 (7th Cir.1999) quoting *North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510 (1919). "Contracts for weighing, inspecting, and measuring cargo preparatory to its delivery are under the maritime jurisdiction, as are contracts for storage services incidental to the maritime event." Moore's Federal Practice, § 703.04[2][c][v], at 703–26.

In this case, assuming that contracts existed between the parties for either the unloading or loading of the barges, those contracts were in reference to maritime services. It is appropriate for this Court to assert admiralty jurisdiction over disputes arising from such contracts.

### *ANALYSIS OF OHIO POWER'S MOTION TO DISMISS*

Ohio Power argues that Hill's third-party complaint should be dismissed under

federal maritime law or, alternatively, under Illinois law. Ohio Power argues that Hill's third-party complaint should be dismissed under maritime law for several reasons, namely: (1) Hill's negligence claim must be dismissed because Hill's fails to state any duty owed to it by Ohio Power; (2) Hill's is too remote to be a third-party beneficiary of any contract between Orgulf and Ohio Power; (3) Hill's negligence claim must be dismissed because Hill's wrongfully seeks to recover purely economic damages, and (4) Hill's complaint must be dismissed because Hill's improperly prays for indemnification where Hill's is a wrongdoer.

■ Ohio Power also argues that Hill's third-party complaint should be dismissed under Illinois law for several reasons. Illinois law, however, is not applicable to this case. The original complaint invoked the Court's admiralty jurisdiction; the third-party plaintiff's complaint invoked the Court's admiralty jurisdiction, and the Court has determined, based on the pleadings, that admiralty jurisdiction does exist in this case. Because the admiralty jurisdiction is aimed at providing the shipping industry with a uniform body of law, a federal court must apply federal admiralty law to admiralty cases when possible. *See Continental Cas. Co. v. Anderson Excavating & Wrecking Co.,* 189 F.3d 512, 519 (7th Cir.1999). Federal courts should not borrow state law unless there is no applicable federal admiralty law. *Id.* In this case, the Court need not consider Ohio Power's arguments based on Illinois law. Federal admiralty law is sufficient.

For reasons discussed below, Ohio Power's arguments based on federal admiralty law have not persuaded this Court to dismiss Hill's third-party complaint.

1. *The Tort Claim*

■ Hill's, in its third-party complaint, claims that Ohio Power negligently loaded the barges and thereby caused or contributed to Orgulf's damages. Ohio Power contends that the negligence claim of the third-party complaint should be dismissed, arguing that no duty has been pled by Hill's.

The Court agrees that, even accepting Hill's allegations as true, Ohio Power owed no duty directly to Hill's. However, Federal Rule of Civil Procedure 14(c), which governs third-party practice in admiralty cases provides, in part:

> The third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided by Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

Fed.R.Civ.P. 14(c). Thus, in admiralty cases, a third-party defendant may be brought in not only under a theory that the third-party defendant is liable to the third-party plaintiff (the original defendant), but also "under a theory that the third-party defendant is directly liable to the original plaintiff either jointly with the original defendant or instead of the original defendant." 3 J. Moore, Federal Practice 14.34 (2d ed.1980).

In this case, Hill's complaint against Ohio Power states as follows:

> This is a case favorable to jurisdiction within the (sic) Rule 9(h) of the Federal Rules of Civil Procedure. Pursuant to Fed.R.Civ.P. 14(C)(sic), Third Party Plaintiff is pursuing this Third Party Complaint against the Third Party [Defendant Ohio Power] requiring Third Party [Defendant Ohio Power] to answer its Third Party Complaint and the attached Complaint of Plaintiff.

Hill's Third–Party Complaint ¶ 4 (Doc. No. 4). Hill's Complaint further alleges that "Assuming that the barges were not cleaned properly by Hill's, which Hill's stringently denies, then Third Party [Defendant Ohio Power] negligently inspected said barges and should have rejected said barges for loading until the barges could be properly cleaned." Hill's Third–Party Complaint ¶ 11 (Doc. No. 4). Finally, Hill's alleges that Ohio Power's negligence was the "sole proximate or contributing legal cause of any damages sustained by [Orgulf]."

Thus, Hill's has clearly alleged the following: (1) that Ohio Power was negligent in its failure to inspect or in conducting an improper inspection prior to loading the barges, and (2) that such failure proximately caused damages to Orgulf. Certainly, under the federal notice pleading rule, that is sufficient to allege a duty owed by Ohio Power to Orgulf and breach thereof.

Although Hill's has not pled that Ohio Power owed a duty directly to Hill's, Hill's third-party complaint has effectively tendered Ohio Power to Orgulf as an additional defendant pursuant to Rule 14(c). *See Royal Insurance Company of America*, 194 F.3d 1009, 1018–19 (9th Cir.1999); *Riverway Company v. Trumbull River Services, Inc.*, 674 F.2d 1146, 1154 (7th Cir.1982).

### 2. The Contract Claim

Ohio Power contends that Hill's has failed to allege that Ohio Power owed any

contractual duty to Hill's. The Court agrees. Neither does Hill's third-party complaint allege that Ohio Power owed contractual duties to Orgulf. Moreover, while Orgulf's original complaint against Hill's does assert a contract claim against Hill's, that complaint does not allege that Ohio Power owed Orgulf any contractual duty. In short, there is no allegation in any complaint before the Court that Ohio Power owed any party any contractual duty.

■ The Court is puzzled by the thrust and parry between the parties over the scope of Ohio Power's contractual duty and the scope of the implied warranty of workmanlike performance, all taking place in the absence of any contract claim against Ohio Power. First, in its motion to dismiss, Ohio Power denied that any contract ever existed between Ohio Power and Orgulf. Ohio Power even attached an affidavit to that effect to its motion to dismiss.[1] Hill's responded to the affidavit, arguing "it is immaterial as to whether there was a specific contract or not concerning the loading, since there is an implied warranty of workmanlike performance that Ohio Power, as stevedore, owes to all interested parties ...." Hill's Response to Ohio Power's Motion to Dismiss, p. 3. Actually, the entire argument is immaterial because no party has made a contract claim against Ohio Power.[2]

■ As for the stevedore's implied warranty of workmanlike performance, it is true that the warranty "arises by opera-

---

1. The Court has not considered the affidavit. It would be inappropriate to do so in the context of a Rule 12(b)(6) motion to dismiss.

2. Admittedly, Hill's has referred to the original complaint, which contains a contract claim, and cited to Rule 14(c). This, by itself, cannot logically amount to a contract claim against the third-party defendant. There must be some theory presented by the third-

party plaintiff as to how and why the third-party defendant is liable. Otherwise, there would be no allegation for the third-party defendant to answer. *See, e.g., Royal Insurance Company of America v. Southwest Marine*, 194 F.3d 1009, 1018 (9th Cir.1999) (noting that the third-party plaintiff not only cited Rule 14(c) but also "explained how and why the third-party was directly liable to [the original plaintiff]").

tion of law without regard to actual contract or privity of contract." *Waterman S.S. Corp. v. Dugan & McNamara, Inc.,* 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). The stevedore has an implied contractual duty to " 'perform his task properly.' " *United States v. C–Way Construction Co.,* 909 F.2d 259, 263 (7th Cir.1990) *quoting Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 170, 101 S.Ct. 1614, 1623, 68 L.Ed.2d 1 (1981). It arises by operation of law without regard to actual contract or privity of contract. *Waterman S.S. Corp. v. Dugan & McNamara, Inc.,* 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

However, Hill's invocation of the implied warranty in its response to Ohio Power's motion to dismiss misses the mark. The implied warranty might very well support a contract claim—even one made in the absence of an actual contract. Such a claim might be labeled as a contract claim or as a warranty claim. This Court is aware of the federal liberal pleadings standards and does not require artful pleading. *See* Fed.R.Civ.P. 8.[3] In this case, however, Hill's invoked the warranty for the first time in its response to the motion to dismiss and did so in support of a contract claim that was never even arguably made.[4]

Despite the federal system's notice pleading rule, the Court cannot pretend to see what does not exist.[5] Despite the stevedore's implied warranty, the Court may not write a contract claim into the pleadings on behalf of the parties. And, despite the liberality of Rule 14(c), the Court cannot order Ohio Power to answer an allegation that has not been made by either the original plaintiff or the third-party plaintiff (the original defendant). Neither may the Court dismiss a claim that has not been plead.

### 3. *The Nature of the Alleged Damages.*

 Ohio Power contends that the negligence claims against Ohio Power should be dismissed because Orgulf has alleged only purely economic damages. Orgulf contends first that it has alleged property damage, and not purely economic damages, and secondly that even if it had alleged purely economic damages, such damages are available in this case.

 The Supreme Court set forth the rule against purely economic damages in admiralty cases in *Robins Dry Dock and Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). Under *Robins,* "purely economic damages" are not available in admiralty for negligence claims. In *Robins,* the charterer of a vessel sued a

---

**3.** The Court is also aware of the liberal nature of the federal rule on amendment of pleadings. *See* Fed.R.Civ.P. 15 (stating that the Court shall grant leave to amend "freely ... when justice so requires"). In this case, any party wishing to amend its pleadings should do so in a manner consistent with Rule 15 and Local Rule 15.1. Local Rule 15.1 also concerns the amendment of pleadings.

**4.** The parties have co-mingled their discussions of the implied warranty with their discussion of the negligence claims. The stevedore's warranty of workmanlike service, however, is based on contract and has nothing to do with tort. *See Ryan Stevedoring Co. Inc. v. Pan–Atlantic Steamship Corporation,*

350 U.S. 124, 134, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (stating that the suit was not changed "from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service").

**5.** This situation is like the parable of the Emperor's New Clothes, and the Court would be remiss if it did not point out, at this early stage of the litigation, that the emperor has no clothes. In other words, there simply is no contract claim (or warranty claim) against Ohio Power in the pleadings, despite the respective arguments of the parties in support of or against such a claim.

repair company that negligently damaged the vessel's propeller while it was in dry dock, alleging that the resulting delay caused the charterer to lose profits it otherwise would have derived from the use of its ship had the ship been operable. The Supreme Court denied recovery for lost profits, noting also that the charterer did not have a proprietary interest in the vessel. *Id.* at 309, 48 S.Ct. 134.

The Fifth Circuit has stated, "The rule's purpose is to prevent limitless liability for negligence and the filing of law suits of a highly speculative nature." *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 152 (5th Cir.1983). The rule against recovery of damages for "economic loss" is generally seen as establishing a line between tangible physical property damage—which is not barred by the rule—as opposed to the intangible economic injuries of lost expectations or advantages normally associated with contract theories. In some cases, particularly those involving the business context, "there is not always a bright line separating 'economic losses' from 'damages to property'; indeed, the two categories tend to overlap." *Dixie–Portland Flour Mills, Inc. v. Nation Enterprises, Inc.*, 613 F.Supp. 985, 987 (N.D.Ill. 1985).

In this case, it would be imprudent for the Court to attempt to draw the line between "economic losses" and "property damage" without further development of the facts. It is clear that Orgulf seeks damages which allegedly resulted from the contamination of its barges and the cargo which was carried in them. At this point in the case, however, the nature of the damages that Orgulf seeks is not clear. Moreover, whether Orgulf actually had or has a proprietary interest in the cargo is another issue of fact that must be clarified by discovery.

The Court cannot state at this time that the plaintiff has not sustained damages recoverable under a tort theory. Whether the plaintiff's damages consist of "damage to property" or "purely economic loss" is simply not clear. Therefore, the Court will not dismiss the claim for negligence against Ohio Power.

4. *Right to Indemnification.*

Ohio Power argues that Hill's complaint must be dismissed because Hill's improperly prays for indemnification where Hill's is a wrongdoer. As noted above, indemnification principles are inapposite to the negligence claim against Ohio Power, because Hill's third-party complaint effectively tenders Ohio Power to Orgulf as an additional defendant. *See Royal Insurance Company of America*, 194 F.3d 1009, 1018–19 (9th Cir.1999) and *Riverway Company v. Trumbull River Services, Inc.*, 674 F.2d 1146, 1154 (7th Cir.1982).

Any liability of the parties flowing from their negligent conduct will be apportioned according to each party's collective fault. *Id.; see also United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (authorizing utilization of comparative fault principles in admiralty cases) and *Agrico Chemical Co. v. M/V Ben W. Martin*, 664 F.2d 85, 93 (5th Cir.1981) (apportioning liability according to comparative fault); *Purnell v. Norned Shipping B.V.*, 801 F.2d 152 (3d Cir.1986) (same); *Gordon H. Mooney Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619, 625–26 (2d Cir.1980) (same).

Proceeding in this manner is consistent with the language and the purpose of Rule 14(c). Rule 14(c) provides that when a third-party plaintiff demands judgment on behalf of the original plaintiff "the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff." Fed.R.Civ.P 14(c); *See Rodi Yachts,*

*Inc. v. National Marine, Inc.,* 984 F.2d 880, 882 (7th Cir.1993). "The significance of Rule 14(c) is that it permits the plaintiff to obtain relief directly from the third-party defendant, cutting out the middle-man, the third-party plaintiff." *Greenwell,* 268 F.3d at 493.

 Rule 14(c), is a rule "'designed to expedite and consolidate admiralty actions by permitting a third-party plaintiff to demand judgment against a third-party defendant in favor of the plaintiff.'" *Greenwell v. Aztar Indiana Gaming Corp.,* 268 F.3d 486, 493 (7th Cir.2001) *quoting Texaco Exploration & Production Co. v. Am-Clyde Engineered Products Co.,* 243 F.3d 906, 910 (5th Cir.2001).

In this case, Hill's does not seek recovery for damages that it sustained; it merely desires to avoid liability for any portion of a judgment that may be entered against it and in favor of Orgulf. Accordingly, the Court will treat the negligence claim against Ohio Power as if Orgulf had stated the claim against Ohio Power when it commenced the action. *See Riverway Company v. Trumbull River Services, Inc.,* 674 F.2d 1146, 1154 (7th Cir.1982).

Therefore, in this case, Orgulf can recover its damages from Ohio Power if the latter was negligent and its negligence was a cause of Orgulf's damages, and from Hill's on the original complaint if Hill's was negligent and its negligence a cause of Orgulf's damages. The Court will not dismiss the negligence claim against Ohio Power found in the third-party complaint. Rather, Ohio Power must answer that claim as if it had been made by Orgulf.

### CONCLUSION

For the reasons discussed above, the motion to dismiss (Doc. No. 16) is **DENIED.**

The third-party defendant, Ohio Power, is **ORDERED** to answer the third-party complaint.

**IT IS SO ORDERED.**