**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GALE WHEATON,

       *Petitioner,*

   v.

GOLDEN GATE BRIDGE, HIGHWAY &
TRANSPORTATION DISTRICT;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, and DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

       *Respondents.*

No. 07-72141

BRB No.
06-0672

OPINION

On Petition for Review of a
Final Order of the
Benefits Review Board

Argued and Submitted
December 12, 2008—San Francisco, California

Filed March 16, 2009

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and William T. Hart*, District Judge.

Per Curiam Opinion

---

*The Honorable William T. Hart, United States District Judge for the
Northern District of Illinois, is sitting by designation.

**COUNSEL**

John Ralph Hillsman, Esquire, McGuinn, Hillsman & Palefsky, San Francisco, California, for the petitioner.

Helen Hart Cox, Attorney, U.S. Department of Labor, Washington, DC, for the respondents.

**OPINION**

PER CURIAM:

Gale Wheaton appeals the denial of his claim for disability benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Gale Wheaton was a ferry repairman and mechanic in the Ferry Division of the Golden Gate Bridge, Highway & Transportation District (the "District"). In October 1999, he suffered a back injury while working aboard a vessel on navigable waters of the United States. Wheaton has been paid benefits under California workers' compensation law. If covered by the LHWCA, he would be entitled to additional disability benefits. The dispute turns on whether the District is a "subdivision" of a state as that term is used in § 3(b) of the LHWCA, 33 U.S.C. § 903(b), which provides: "No compensation shall be payable in respect of the disability or death of an officer or employee of the United States, or any agency thereof, or of any State or foreign government, or any subdivision thereof."

An administrative law judge ("ALJ") found, relying on facts stipulated to by the parties, that the District was a subdivision of the State of California and therefore was excluded from coverage under the LHWCA. Wheaton timely appealed to the LHWCA Benefits Review Board ("BRB"), which affirmed. Before this court, both the District and the United States Department of Labor, by the Director of the Office of Workers' Compensation Programs (the "Director"), argue for affirmance.

The parties agree that the District is not an arm of the state entitled to the protections of the Eleventh Amendment nor entitled to state sovereign immunity from federal claims. Case law supports those conclusions. *See Michaeledes v. Golden Gate Bridge, Highway & Transp. Dist.*, 202 F. Supp. 2d 1109, 1112-13 (N.D. Cal. 2002). *See also Dougherty v. Golden Gate Bridge, Highway & Transp. Dist.*, 31 F. Supp. 2d 724, 727 &

n.3 (N.D. Cal. 1998) (*dictum* that the District "likely" is not an arm of the state). They also agree that, under California law, the District has the status of a local public agency such as a county or municipality. The parties further stipulated to a number of facts related to the District's creation, administration, operations, and powers.

The ALJ applied, and the BRB affirmed, application of a multifactor test for determining whether a public entity is a subdivision. This test was derived from our precedent as well as guidance from the United States Supreme Court and the Benefits Review Board. *See Tyndzik v. Director, OWCP*, 53 F.3d 1050, 1052-53 (9th Cir. 1995); *Keating v. City of Titusville*, 31 BRBS 187 (BRB 1997); *NLRB v. Natural Gas Util. Dist. of Hawkins County, Tenn.*, 402 U.S. 600, 605-09 (1971) (interpreting "political subdivision" as used in the NLRA, 29 U.S.C. § 152(2)).

**[1]** In *Tyndzik*, 53 F.3d at 1052-53 & n.5, we held that the University of Guam was not a subdivision of a state[1] as that term is used in the LHWCA. We noted that the University was created by the legislature, had a Board of Regents appointed by the legislature, and had a budget controlled by the legislature. However, we held the University was not a subdivision of Guam because the Guam government did not otherwise control the University and the University could not perform basic government functions on its own, take property by eminent domain, enact ordinances, or impose taxes. In so holding, we stated that the University was not "akin" to a municipality, which would qualify it as a subdivision, citing *dictum* from *Purnell v. Norned Shipping B.V.*, 801 F.2d 152, 154 n.2 (3d Cir. 1986). *Tyndzik*, 53 F.3d at 1053. We cited the NLRA definition of "political subdivision" as being analogous and the facts that we relied on are among the factors considered in determining whether an entity is a "political

---

[1]As used in the LHWCA, "State" includes a territory. 33 U.S.C. § 902(8).

subdivision" as that term is used in § 2(2) of the NLRA, 29 U.S.C. § 152(2). *See Hawkins County*, 402 U.S. at 606-09; *Molina v. Union Independiente Autentica De La AAA*, 555 F. Supp. 2d 284, 299 (D.P.R. 2008).

**[2]** Factors that may be considered under the *Hawkins County* test in determining whether the entity's actual operations and characteristics support the conclusion that it is a subdivision of a state include: (a) whether the entity was created by state law; (b) whether the entity was granted all the powers necessary to exercise its functions; (c) whether the entity has the power of eminent domain; (d) whether the entity has the power to assess or collect taxes; (e) the entity's status under state law; (f) whether the entity is exempt from federal taxation; (g) whether the entity's operations are subject to public hearing and its records open to the public; (h) whether the officials administering the entity are responsible to the public or public officials; (i) whether social security benefits for the entity's employees are provided through voluntary rather than mandatory coverage; (j) whether the entity's officers receive nominal compensation; and (k) whether the entity has the power of subpoena. *See Hawkins County*, 402 U.S. at 606-09; *see also Ayres v. International Bhd. of Elec. Workers*, 666 F.2d 441, 442 (9th Cir. 1982).

Petitioner contends that the BRB erred in relying on *Tyndzik* and the *Hawkins County* factors in determining that the District is a subdivision for purposes of the LHWCA. Petitioner also contends that, even if the BRB properly relied on the *Hawkins County* factors, it misapplied them to the stipulated facts. This court has established the standard for review in LHWCA benefits cases, including a determination based on stipulated facts.

> Whether an employee who seeks benefits is covered by the LHWCA is a mixed question of fact and law. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 553-54 (1997). Where, as here, the underlying

facts are undisputed, LHWCA coverage is decided as a matter of law. *See id.* We review "questions of law, including interpretations of the LHWCA," *de novo*. *Gen. Const. Co. v. Castro*, 401 F.3d 963, 965 (9th Cir. 2005). Because the BRB is not a policy-making body, its construction of the LHWCA is not entitled to any "special deference." *M. Cutter Co. v. Carroll*, 458 F.3d 991, 993 (9th Cir. 2006) (internal quotation marks omitted). However, we will " 're-spect the Board's interpretation of the [LHWCA] where such interpretation is reasonable and reflects the policy underlying the statute.' " *Id.* (quoting *McDonald v. Dir., OWCP*, 897 F.2d 1510, 1512 (9th Cir. 1990)).

*Peru v. Sharpshooter Spectrum Venture LLC*, 493 F.3d 1058, 1061 (9th Cir. 2007). Additionally, the Director's interpreta-tion of the LHWCA, even when advanced during litigation, will be accorded "considerable weight." *Healy Tibbitts Build-ers, Inc. v. Director, OWCP*, 444 F.3d 1095, 1098 (9th Cir. 2006) (citing *Mallott & Peterson v. Director, OWCP*, 98 F.3d 1170, 1172 (9th Cir. 1996)); *Christensen v. Stevedoring Serv. of Am., Inc.*, 430 F.3d 1032, 1034-35 (9th Cir. 2005) (quoting *Force v. Director, OWCP*, 938 F.2d 981, 983 (9th Cir. 1991)). "Where the relevant statute is 'easily susceptible' of the Director's interpretation, 'we need go no further.' " *Christen-sen*, 430 F.3d at 1035 (quoting *Force*, 938 F.2d at 984). *Accord Healy*, 444 F.3d at 1098 (quoting *Mallott*, 98 F.3d at 1172).

As originally enacted and until amended in 1984, the perti-nent provision was contained in § 3(a)(2) of the LHWCA, 33 U.S.C. § 903(a)(2), and read the same except that the word "political" was before "subdivision." *See* Pub. L. 98-426 § 3, 98 Stat. 1640 (Sept. 28, 1984). The LHWCA contains no defi-nition of "subdivision" and there are no regulations providing a definition. The legislative history from the original enact-ment in 1927 contains nothing addressing this term nor is

there any legislative history from the 1984 amendment that aids in interpreting the term or explaining why "political" was dropped from the statutory language.

**[3]** Along with *Tyndzik*, other courts have consistently held that municipalities and agencies of municipalities fall within the meaning of subdivision as that term is used in the LHWCA. *See O'Brien v. City of New York*, 822 F. Supp. 943, 950 (E.D.N.Y. 1993); *Bagrowski v. American Export Isbrandtsen Lines, Inc.*, 305 F. Supp. 432, 433 (E.D. Wis. 1969), *rev'd on other grounds*, 440 F.2d 502 (7th Cir. 1971); *City of Plantation v. Roberts*, 342 So. 2d 69, 71 & n.1 (Fla. 1976). Also, when the LHWCA was passed in 1927, the term "political subdivision" was commonly used to include municipalities. *See, e.g.*, *First Nat'l Bank v. City of Hartford*, 273 U.S. 548, 551 (1927) (quoting Wis. Stat. § 70.11) ("any county, town, city village, school district, or other political subdivision of this state"); *General Am. Tank Car Corp. v. Day*, 270 U.S. 367, 371-72 (1926) (referring to municipalities and parishes of Louisiana as "political subdivisions"); *Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 674 (1923) ("[m]unicipalities are political subdivisions of the state"); *City of Trenton v. State of N.J.*, 262 U.S. 182, 185-86 (1923) ("The city is a political subdivision of the state, created as a convenient agency for the exercise of such of the governmental powers of the state as may be intrusted to it.").

Wheaton argues that the consistent line of cases that hold the plain meaning of "subdivision" includes municipalities, schools districts, and the like should not be followed in interpreting § 3(b) because such a construction is inconsistent with the purposes and structure of the LHWCA. Wheaton reasons that (a) only a federal law such as the exclusive remedy provision of § 5 of the LHWCA, 33 U.S.C. § 905, can immunize a municipal entity against federal maritime law; (b) if a municipality, which is not protected by the Eleventh Amendment or state sovereign immunity from federal claims, is excluded from the LHWCA as a political subdivision, it will

not have protection from maritime tort liability claims of its maritime employees; and (c) this result would be inconsistent with a purpose of the LHWCA, which is to protect employers from such liability to its employees. Thus, Wheaton argues that "subdivision" in the LHWCA should be read to include only arms of the state, which the parties agree the District is not.

**[4]** A key problem with this reasoning is that there is no legislative history supporting Wheaton's view. Instead, the legislative history indicates that the primary purposes of the LHWCA were to provide workers' compensation protection for those maritime workers who would not be covered by state workers' compensation laws under *Southern Pac. Co. v. Jensen*, 244 U.S. 205 (1917), and its progeny, and to protect employers, not from maritime tort liability, but from the uncertainty of whether employees were or were not covered by state compensation laws. *See Calbeck v. Travelers Ins. Co.*, 370 U.S. 114, 119-24 (1962). Wheaton argues that a purpose of protecting the employer from tort liability should be assumed for the LHWCA because the LHWCA contains an exclusive remedy provision, 33 U.S.C. § 905, and a purpose of most workers' compensation acts is that they provide a tradeoff between liability without the need to prove fault and a more limited recovery. *See Bradford Elec. Light Co. v. Clapper*, 286 U.S. 145, 159 (1932), *overruled on other grounds*, *Crider v. Zurich Ins. Co.*, 380 U.S. 39 (1965). No legislative history, however, supports that this was a principal purpose for passing the LHWCA; nor that the exclusion for political subdivisions was in any way related to respect for sovereign immunity.

**[5]** Wheaton contends that, in the phrase "any State or foreign government," "State" should be read as a modifier of "government." The pertinent statutory language would then read: "any State . . . government, or any subdivision thereof." That language referring to a subdivision of State government then is meant to be limited to departments or arms of the State

government. The more natural reading, however, is to read "State" or "foreign government" as two separate nouns. The original language of the statute containing "political subdivision" was understood as referring to an entity in the state, not just a department of the government. There is nothing to indicate that dropping "political" from the statute was meant to effect a substantive change.

**[6]** The plain language of the statute—"a State . . . or any subdivision thereof"—should be read as including municipalities of a state, not just arms of a state as Petitioner contends. *Cf. Pacific Mar. Ass'n v. Local 63, Int'l Longshoremen's & Warehousemen's Union*, 198 F.3d 1078, 1081 (9th Cir. 1999) (construing similar language in the NLRA). Moreover, even were the statutory language open to more than one interpretation, the BRB's and Director's construction should be respected and upheld as long as it is reasonable. *Peru*, 493 F.3d at 1061; *Healy*, 444 F.3d at 1098. It is reasonable to construe subdivision of a State as including municipalities of a State. Such a construction by the BRB and Director is also reasonable in light of the consistent case law so construing § 3(b). *See O'Brien*, 822 F. Supp. at 950; *Bagrowski*, 305 F. Supp. at 433; *Roberts*, 342 So. 2d at 71; *see also Tyndzik*, 53 F.3d at 1053; *Purnell*, 801 F.2d at 154 n.2. *See also Pacific Mar.*, 198 F.3d at 1081. The *Hawkins County* test should be applied to determine whether the District is a subdivision of California.

**[7]** We further find, contrary to Petitioner's contention, that the BRB weighed the *Hawkins County* factors correctly in finding that the District is a subdivision of the state. As stipulated by the parties, the District was created pursuant to state law and following a vote in a six-county area. The District's directors are appointed by local elected officials. Meetings of the District's board are open to the public and the District must follow state competitive bidding requirements. The District is a corporate body that may take action in its own name. Its employees are employees of the District, not employees of

the state. In accordance with applicable statutes, the District has full power to perform and fund all its functions. Actions of the District's board are effected through ordinances, resolutions, and motions. The District cannot levy taxes, but it establishes and collects tolls and can issue bonds in its own name to finance its functions. It also may obtain federal funding in its own name. The District also has the power of eminent domain. It may enter into contracts, including contracts with other public entities. It may establish rules and regulations governing the use of its property. Within the confines of the California Vehicle Code, the District establishes traffic regulations for traveling on its facilities and the California Highway Patrol enforces violations of the District's traffic rules. Under California law, it is considered a local public agency with the same status and tort immunities as a county or municipality.

[8] The factors that were considered in *Hawkins County* and *Tyndzik* support the BRB's holding that the District is a subdivision of the state. Although the BRB did not have before it stipulated facts relevant to every factor, the District possessed sufficient characteristics of a political subdivision to render the BRB's finding reasonable. Petitioner contends the facts do not support that the District is a subdivision of the State because it is financially independent of the state, none of the members of its board are elected, and providing mass transportation by ferry is not a basic governmental function. Being financially independent of the state helps establish that the District is not an arm of the state, but not necessarily that it is a private corporation. Municipalities and other local entities are financially independent of the state, but are still political subdivisions. Having the District's board appointed by local officials is a factor favoring a determination that it is a subdivision; it is not necessary that the board itself be elected or composed of officials elected to other positions.[2] Appoint-

---

[2]The ALJ cited Cal. Streets & Highway Code § 27510 for the proposition that 8 members of the 19-member board must be elected local officials.

ment of the governing board by elected officials favors the conclusion that the entity is a subdivision of the state. *Hawkins County*, 402 U.S. at 605. The District manages a bridge, including the highway that goes over it. It also manages public transportation by bus and ferry. These are governmental functions. *See Commissioner of Internal Revenue v. Harlan*, 80 F.2d 660, 661-62 (9th Cir. 1935) (in holding, for purposes of a tax ruling, that the District was engaged in governmental functions, the court stated "the maintenance of highways, and consequently of bridges and ferries connecting the same, by the government or its subdivisions" is "well established" to be the "exercise of an essential governmental function"); *United States v. Washington Toll Bridge Auth.*, 307 F.2d 330, 332-33 (9th Cir. 1962). The other factor raised by petitioner is that the District has no taxing powers. Highways and bridges are often funded by tolls instead of local taxes, as is the District. The BRB's determination that "subdivision," as used in § 3(b) of the LHWCA, 33 U.S.C. § 903(b), includes local municipal entities is consistent with the language of the statute and the case law. We uphold the BRB's determination that the District is a subdivision of the state as reasonable.

The decision of the BRB, denying LHWCA benefits, is

**AFFIRMED.**